IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



ANTHONY THOMPSON,

                                      Plaintiff,

                v.                                  Civil Action Number 3:07CV793

KELLOGG BROWN & ROOT
(KBR)/HALLIBURTON,

                                  Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings (**Dkt. No. 7**) and Plaintiff's Motion to Amend Complaint (**Dkt. No. 21**). For the reasons stated below, the Court shall GRANT Defendant's Motion and dismiss these proceedings in favor of arbitration. Consequently, Plaintiff's Motion to Amend Complaint shall be DISMISSED as moot.

### I.

On December 28, 2007, Thompson, proceeding pro se, filed suit against Kellogg Brown & Root (KBR)/Halliburton ("KBR") alleging that KBR terminated him because of his race and in retaliation for him filing a racial discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII of the Civil Rights Act of 1964. KBR claims Thompson was discharged due to a restructuring/reduction in its work force.

Thompson was formerly employed as Director of Engineering for Overseas Administration

1

Services, Ltd. ("OAS")[1] at Camp Anaconda in Balad, Iraq from August 2, 2005 until his termination on July 1, 2006, before the expiration of his Employment Agreement.  The Employment Agreement Thompson entered into as a condition of his employment contained the following provision:

> In consideration of your employment, you agree that your assignment, job or compensation can be terminated with or without cause, with or without notice at any time at your option or at Employer's option.  You also agree that you will be bound by and accept as a condition of your employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference.  You understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim[s] arising in the workplace, you have against parent or affiliate of Employer, must be submitted to binding arbitration instead of to the court system.

(Def.'s Mem. Supp. Mot. Compel Arb., Ex. B at ¶ 26.)  The Dispute Resolution Program ("DRP") further provides that the proceedings under the program "shall be the exclusive, final and binding method by which Disputes are resolved."  (Def.'s Mem. Supp. Mot. Compel Arb., Ex. C at 6.) Disputes are defined to include, in pertinent part, allegations of "discrimination based on race, sex, religion, national origin, age, veteran status or disability . . . ."  (Def.'s Mem. Supp. Mot. Compel Arb., Ex. C at 2.)  Either party may initiate arbitration proceedings by serving a written request on one of three designated arbitration agencies: the American Arbitration Association, Judicial Arbitration and Mediation Services, or the Center for Public Resources.  (Def.'s Mem. Supp. Mot. Compel Arb., Ex. C at 8.)  "Should any party refuse to arbitrate or refuse to cooperate in arbitration the remaining party may proceed with arbitration in the absence of the party so refusing."  (Def.'s Mem. Supp. Mot. Compel Arb., Ex. B at ¶ 26.)

Accordingly, KBR presently moves the Court to stay or dismiss this action in favor of

---

[1]OAS is a subsidiary of KBR.  During Thompson's employment, KBR was a subsidiary of Halliburton.

2

arbitration pursuant to the terms of the Agreement. In response, Thompson essentially contests the validity of the Agreement and the arbitration provision. Thompson also argues that prior to filing suit, he made multiple attempts to resolve, mediate, and/or settle with KBR, who either ignored or rejected his requests.

## II.

Section 2 of the Federal Arbitration Act ("FAA") provides, in pertinent part, that

> a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA reflects "a congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). The FAA was intended to "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Id. Accordingly, any doubts concerning the scope of arbitrable issues are resolved in favor of arbitration. Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005).

A district court must "grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002). To compel arbitration, a movant must demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [non-

3

movant] to arbitrate the dispute." Id. at 500-01 (internal quotation marks omitted).  In the instant case, Thompson appears to contest the second and fourth elements, denying the existence of a binding contract to arbitrate this dispute and that he failed to utilize the DRP.[2]

**A.**

The Supreme Court has explained that challenges to the validity of arbitration agreements can be divided into two types: (1) specific challenges to the validity of the agreement to arbitrate; and (2) "challenges [to] the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006).  "[W]hen parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court." Preston v. Ferrer, 128 S. Ct. 978, 981 (2008).  In contrast, specific challenges to the arbitration provision itself are left to the courts to decide. See Buckeye Check Cashing, 546 U.S. at 445-46.

In the instant case, Thompson asserts that: (1) he entered the Employment Agreement under

---

[2]Thompson also contends that (1) because KBR violated the Employment Agreement by engaging in and fostering a work environment that allowed unlawful discriminatory activity to exist, the Agreement is null and void; (2) KBR's counsel attempted to coerce him to drop the lawsuit and arbitrate; and (3) arbitration of employment discrimination disputes are inconsistent with civil rights laws.  Thompson's contentions lack legal foundation and/or do not bear on the issues presented in this Motion.  KBR's alleged violation of the Employment Agreement does not nullify the arbitration provision nor does counsel's purported attempt to coerce Thompson to arbitrate this case.  Finally, it is well established that employment discrimination disputes are subject to arbitration. See Circuit City Stores v. Adams, 532 U.S. 105, 123 (2001) (noting that the "Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law").

4

coercive circumstances because he did not have adequate time to review the Agreement before signing, KBR lured him with a $500 stipend upon the signing of the Agreement, and he signed the Agreement as a condition of employment; (2) the arbitration clause was not identified as mandatory at the time of signing; and (3) he did not receive a copy of the DRP until January 2008, after the filing of his complaint. Thompson's contentions raise both types of challenges. Specifically, Thompson's argument that he was coerced into his Employment Agreement is an attack on the validity of the Agreement as a whole and, therefore, must be considered by the arbitrator.[3]

The issue of whether an arbitration agreement exists between the parties is a question of state contract law. Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005) (holding that although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts). The Employment Agreement expressly states that it is "formed in the State of Texas, and shall be governed by and construed in accordance with the laws of the State of Texas."[4] (Def.'s Mem. Supp. Mot. Compel Arb., Ex. B at ¶ 25.) Because the contract

---

[3]The Court notes that even if it construed Thompson's coercion argument as an attack on the arbitration provision, his argument would fail. See In re U.S. Home Corp., 236 S.W.3d 761, 764 (Tex. 2007) (holding that a "party cannot avoid an arbitration clause by simply failing to read it"); In re H.E. Butt Grocery Co.,17 S.W.3d 360, 372-73 (Tex. App. 2000) (rejecting plaintiff's defenses of fraudulent inducement and procedural unconscionability based on insufficient opportunity to review the arbitration provision and being forced to sign the agreement as a condition of his employment). In H.E. Butt Grocery, the court explained that the plaintiff "is presumed to know the contents of a document he signed," particularly "in view of the conspicuous notice of the agreement to arbitrate." 17 S.W.3d at 373. The court further observed that there was no proof that the defendant misled the plaintiff about the arbitration provision. Id. Here, Thompson does not claim that he was unaware of the arbitration provision or that he was misled, but that he was not allotted adequate time to review it. Thompson may not avoid the arbitration clause because he made a hasty decision and failed to take sufficient time to review the provision.

[4]The Agreement provides an exception for the "validity and enforceability" of the arbitration provision; specifically, that "all issues shall be governed and construed in accordance

was formed in Texas and the parties agreed that Texas law governs, the Court applies Texas law.

The Court first addresses Thompson's argument that the arbitration clause was not identified as mandatory at the time of signing. Thompson's argument lacks merit. "A party who signs a contract containing an arbitration provision does not have to be told about the provision, but is presumed to know the contents of the contract." H.E. Butt Grocery, 17 S.W.3d at 372. The arbitration provision, here, unambiguously states "that any and all claims that you might have against Employer related to your employment, including your termination . . . must be submitted to binding arbitration instead of to the court system." (Def.'s Mem. Supp. Mot. Compel Arb., Ex. B at ¶ 26) (emphasis added). It could not be any clearer that this provision mandates arbitration. Moreover, Thompson's argument is belied by the fact that his initials appear directly below the arbitration mandate. (Def.'s Mem. Supp. Mot. Compel Arb., Ex. B at ¶ 26.)

Thompson's contention that he did not receive a copy of the DRP also fails under Texas law. In Texas, "[a] contractual term is not rendered invalid merely because it exists in a document incorporated by reference," and "arbitration-related language is no exception to this rule." In re D. Wilson Const. Co., 196 S.W.3d 774, 781 (Tex. 2006); accord Barker v. Halliburton Co., --- F. Supp. 2d ----, 2008 WL 276390, at *4 (S.D. Tex. 2008). In Barker, the plaintiff argued that the arbitration provision is procedurally unconscionable because she was not given a copy of the dispute resolution plan adopted by reference in the employment contract, and was therefore unaware of the substance of the program. 2008 WL 276390, at *4. The court rejected this argument explaining that, under

---

with the Federal Arbitration Act." (Def.'s Mem. Supp. Mot. Compel Arb., Ex. B at ¶ 25.) When interpreting the FAA, however, the Supreme Court has directed that the "courts generally should apply ordinary state-law principles that govern the formation of contracts" when deciding whether the parties agreed to arbitrate a certain matter. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Accordingly, this Court applies Texas law.

Texas law, "a party who signs a contract is charged with notice of its contents as a matter of law." Id.

Similarly, because paragraph 26 of the Employment Agreement incorporates the DRP by reference,[5] Thompson is charged with notice of its contents. Even if Thompson did not receive a copy of the DRP until after he filed his complaint, the Employment Agreement contained the binding arbitration clause and notified Thompson of the DRP's existence. Moreover, by his own admission, Thompson engaged in discussions with KRB's DRP representative prior to filing suit and, therefore, Thompson had ample opportunity to request a copy of the DRP. Accordingly, because the Employment Agreement incorporates the DRP, Thompson is charged with notice of the DRP's contents even if he belatedly received a copy of the plan. See Barker v. Halliburton Co., 2008 WL 276390, at *4.

Having rejected Thompson's arguments, the Court concludes that a valid agreement to arbitrate exists between the parties.

## B.

Next Thompson contends that "his multiple attempts to resolve, mediate, and/or settle issue to help bring resolution to the matter has been suppressed by Defendant." (Pl.'s Mem. Opp'n Def.'s Mot. Compel Arb. at 3.) In support, Thompson states that he contacted KBR's Onsite Management Supervisor, KBR's Employee Relations, KBR's Legal Department, KBR/Halliburton's DPR Program, and the EEOC in Houston, Texas in an effort to "mediate/negotiate" a resolution with KBR. (Pl.'s Mem. Opp'n Def.'s Mot. Compel Arb. at 4.) Even assuming arguendo that KBR

---

[5]Paragraph 26 states: "You also agree that you will be bound by and accept as a condition of your employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference." (Def.'s Mem. Supp. Mot. Compel Arb., Ex. B at ¶ 26.)

refused to mediate the dispute, this does not excuse Thompson from arbitrating this dispute. First, the Court notes that a mediation process is separate and wholly distinct from an arbitration proceeding. A mediation process involves a neutral third party who attempts to assist the parties in reaching a mutually agreeable resolution. Significantly, the mediator has no power to impose a decision on the parties. In contrast, the third-party arbitrator renders a decision after a hearing at which both parties have an opportunity to be heard. Consequently, Thompson's attempts to mediate this dispute does not equate to initiating arbitration proceedings.

Second, the Employment Agreement expressly contemplates a party's refusal to participate in arbitration. Paragraph 26 of the Employment Agreement states, in relevant part, that "[s]hould any party refuse to arbitrate or refuse to cooperate in arbitration, the remaining party or parties may proceed with arbitration in the absence of the party so refusing." Thus, had Thompson initiated the arbitration proceedings as required by the Employment Agreement and KBR refused to participate, Thompson would have been able to proceed despite KBR's absence.

Because Thompson's attempts at mediation do not excuse his contractual obligation to arbitrate and the Employment Agreement contemplates and provides a remedy for a party's failure to participate in arbitration, the Court finds that Thompson failed to submit this dispute to binding arbitration.

### III.

For the aforementioned reasons, the Court shall GRANT Defendant's Motion and dismiss these proceedings in favor of arbitration pursuant to the final and binding arbitration clause in the parties' Employment Agreement. Plaintiff's Motion to Amend Complaint shall be DISMISSED as moot.

8

An appropriate Final Order shall issue.

/s/
_____
James R. Spencer
Chief United States District Judge

Entered this __9th__ day of May 2008